122 1947 W.C. Peggy Evans, Appellant by David Menchetti v. The Illinois Workers' Compensation Commission, Gibson Electric Company Appellee by Paul Coghlan. Mr. Menchetti, you may proceed. Thank you. May it please the Court, good morning, Justices and Council. My name is David Menchetti and I represent the Appellant Peggy Evans. Whatever it is, April 29, 2007 is not the date on which Peggy Evans reached maximum medical improvement in this matter. That's why the order of the Workers' Compensation Commission is wrong, both legally and factually, and the order that I'm referring to is this. The respondent shall pay the petitioner temporary total disability benefits, and I repeat, temporary total disability benefits from July 15, 2004 through April 29, 2007, which is the period of temporary total disability. Again, I repeat, the period of temporary total disability for which compensation is payable. This is the order that Peggy Evans has appealed. From this order, we know that the Commission intended to cut off temporary total disability benefits, which I'll refer to as TTD, on April 29, 2007. That's the clear order from the Commission and it's the clear intention of the Commission that that was the termination date for TTD, April 29, 2007. We also know that by law, TTD is payable until the claimant reaches maximum medical improvement, which has been defined for us by the Supreme Court in the interstate scaffolding case. The way the Supreme Court defines TTD or the extent of TTD in interstate scaffolding is the date on which the claimant's condition has stabilized. In fact, in that case, interstate scaffolding, the Supreme Court went so far as to tell us and instruct us that the maximum medical improvement date is the dispositive inquiry. Again, I repeat, the dispositive inquiry as to the extent of TTD. When the MMI date is determined, that disposes of the issue of the termination date for TTD. April 29, 2007 fails this dispositive inquiry both legally and factually. So, I'd like to first address the fact that April 29, 2007 does not in any way meet the legal definition of MMI, which has to do with the stabilization of the medical condition. In this case, the stabilization of Peggy Evans' medical condition. That date, April 29, 2007, has nothing to do with her medical condition at all. It is just the date on which Peggy Evans placed her individual real estate license for holding purposes with a real estate broker. She didn't see a doctor on that date. She didn't have any medical test or any medical procedure on that date. She didn't undergo a functional capacity evaluation on that date. She wasn't examined by a company doctor on that date. So, it is legally incorrect to terminate TTD on April 29, 2007, because that date has absolutely nothing to do with her medical condition, let alone does it have anything to do with whether her medical condition had stabilized at that time or whether she had reached maximum medical improvement. Furthermore, Peggy Evans had not been released to return to work as a union electrician by any doctor as of that date, as of April 29, 2007, neither by any treating doctor, and she saw multiple treating doctors, or by any of the examining doctors to which she was sent by a Gibson. Nobody, no doctor, released her to return to work as an electrician on or before April 29, 2007. She was never offered to return to work in any light duty capacity by Gibson. They never offered to bring her back to work. She was not released to return to work by anybody, and there was never an offer to bring her back to work. Peggy Evans does not deny that she placed her real estate license with a holding broker on April 29, 2007, but that's all that happened on that date. Nothing else significant happened on that date, and we know that that is not the test for maximum medical improvement. Interstate scaffolding tells us the quote-unquote dispositive test is whether she reached maximum medical improvement, in other words, whether her condition had stabilized on that date, which brings us to the question of fact. Factually, that date is wrong too, and it's wrong because of the overwhelming medical evidence in this case. It is contrary to the manifest weight of the evidence in this case. There is absolutely no doctor in this entire record, not one, who placed Peggy Evans at maximum medical improvement on April 29, 2007. No doctor at all, and there's also other medical evidence that is contrary to April 29, 2007 being the date of maximum medical improvement. For example, and I'd like to give you a few examples, three days before April 29, 2007, on April 26, 2007, Dr. Giresan was recommending that Peggy Evans undergo a cervical fusion, which she could not do because of her high blood pressure, and that's included in the commission decision, which is in the appendix at page 21. Six months after April 29, 2007, six months after that date, Dr. Giresan, Gibson's own doctor, Gibson's own evaluating doctor, said that Peggy Evans was still a surgical candidate except for her high blood pressure and dental infections. Again, appendix page 22. Long after April 29, 2007, Peggy Evans continued to have medical treatment and continued to consult with and receive medical treatment from Dr. Giresan and other doctors too, Dr. Cebulski, for example. Dr. Giresan continued to recommend surgery for almost three years after April 29, 2007. So, as a matter of fact, and as a matter of the manifest weight of the evidence, it is clearly apparent and plainly evident from the overwhelming medical evidence and from all the other facts in this record that Peggy Evans did not reach maximum medical improvement on the wrong date legally because of the definition of MMI and factually because of the overwhelming evidence that I just told you about. In fact, excuse me, didn't the commission find MMI was and didn't they base that on some opinions in the record that since she didn't have surgery, was not able to have that surgery, their condition stabilized in November? I think that's when she also presented for a FCE. Is that against the manifest weight of the evidence, November 2, 2006? So, I just want to be clear that what we are appealing is the order from the commission. And the order from the commission is clearly that respondents shall pay petitioner total disability benefits from July 15, 2004 through April 29, 2007. So, so what follows from that? So, what follows from that is that if now the date of maximum medical improvement is changed to a different date, right, then Peggy Evans should be allowed to appeal that new date, right? Because even Gibson acknowledges in this case that the commission found conflicting MMI dates, right? You're right, Justice. In one case, the commission calls November 2, 2006 the MMI date. In another part of the decision, the commission calls April 29, 2007 the MMI date. But when it comes time to write the order, clearly what the commission did was pick April 29, 2007 as the MMI date. And as you have just mentioned, that date is incorrect. Even the commission has conflicting MMI dates. April 29, 2007 is simply the incorrect date for MMI. The commission, even though the commission says at one point that November 2 might be the MMI date, the order that the commission entered said that April 29, 2007 was the MMI date. So, even the commission decision in and of itself is conflicting. So, what is the relief you're asking? Assume that's the case. You want them to move it back to November? Your Honor, what the relief I'm asking is for it to be remanded to the commission to pick a date that is not legally and factually incorrect. Now, I may disagree with that date if I am lucky enough to have the case remanded and come back up to the appellate court with the new date on a manifest way issue. But in this appeal, Peggy Evans can only appeal what's in front of her. And what's in front of her is the commission deciding that April 29, 2007 is the MMI date. She can't appeal potentially an infinite number of other dates. It would be unfair and impractical for her to be required to do that. We can only appeal what's us and what's in front of us is clearly legally and factually the wrong MMI date, April 29, 2007. Which leads us into the next question. Why is it significant? Why is it significant that the commission pick the correct MMI date? Is it important? Of course, it's important. Because everything else about the case flows from the MMI date. Everything else, whether Peggy Evans is entitled to medical treatment after the MMI date, whether she's entitled to vocational rehabilitation after the MMI date, whether she's entitled to maintenance under Section 8A of the Act after the MMI date, whether she's entitled to any kind of permanency benefit after the MMI date. What type of permanency benefit is she entitled to? How does that benefit accrue? How does the permanency benefit accrue? Is the respondent, Gibson, entitled to any credit against a future award? All of those things depend on the correct MMI date. It's not just a trivial matter. It's not just something we can blow off and say, well, they kind of got it right, but they kind of got it wrong. Because everything else about the case depends on picking the correct MMI date. That's why it's so important to get it right. The issue of whether the commission's decision of no causal connection between her psychological condition and her work injury, does that have anything to do with the MMI date? I don't think so, Justice Hoffman, because nothing about the psychological condition has anything to do with April 29, 2007. The only thing that happened on April 29, 2007, was that Peggy Evans placed her real estate license with a holding broker. That's all that happened. She didn't go to work for that broker. She didn't do anything else. All she did was place her license for holding purposes with that broker. I see that my light has come on, so I just want to very briefly discuss the other issue, which is the wage differential benefit. In this case, the commission denied Peggy Evans a wage differential benefit, because it found that Union Electrician was not her usual and customary employment. What the act says is usual and customary line of employment. That's what I will say. Legally, that finding is incorrect, because the commission said that because the work as Union Electrician was not consecutive and not of the proper duration, that somehow that meant legally that she was not engaged in her usual and customary line of employment as a Union Electrician. That's just legally incorrect. Establishing those requirements is legally incorrect. Factually, it's also contrary to the manifest weight of the evidence to say that Union Electrician was not Peggy Evans' usual and customary line of employment. It's clearly apparent and plainly evident that Union Electrician was not casual employment for Peggy Evans, as the commission called it. She had been trained and educated as a Union Electrician since 1988, and had since that time maintained her Union designation and her Union eligibility for all of that time. She was working as a Union Electrician on the date that this stipulated accident occurred. Okay, Mr. Manchetti, I've let you go way over your Thank you. You'll have time in reply. Thank you so much. Okay. Mr. Coughlin, you may respond. Thank you. Thank you, Your Honor. Good morning, Your Honors. Mr. Manchetti, my name is Paul Coughlin. I represent Gibson Electric. I don't think the holding and interstate scaffolding quite handcuffs the commission as much as Mr. Manchetti is suggesting. People go back to work on light duty before they reach MMI, and there's no question you cannot, you know, if you go back to work, there's no more, you're no longer going to be collecting TTD. So, whether I agree that maximum medical improvement may be a significant factor in determining whether, you know, a period of TTD, but it's not, it's not the only factor. And the commission, in this case, as Justice Mullen pointed out, actually went six months past the date that they found the Ms. Evans was at the point of maximum medical improvement and they Well, counsel, counsel, I think that's exactly the point that your opponent is making. If they determine she reached MMI in November, then what right did they have to award TTD to April? Well, I, this is, this is a complicated set of facts, Justice Hoffman. There, you know, there's nothing set in stone. What do you do when there's a surgery recommended and contemplated, but the person doesn't get it? No, no, I understand that. That goes to the question of when you reach MMI. They, they erred, in my opinion, they erred on the side of Ms. Evans and they awarded her an additional six months. That's what What Mr. Manchetti is arguing is April is clearly not MMI. There's evidence and they found MMI was November. And therefore, the award of TTD through April and the commencement of maintenance the following day is clearly erroneous. With an MMI date they found in November. He says, I can't appeal that MMI date in November until you vacate the award of TTD to April, because April clearly is not an MMI date as they found. And it has to go back to the commission for them to determine what the MMI date is. Terminate the TTD as of the MMI date, and then raise the question of maintenance from that day forth. He says, I simply can't appeal it. Well, I think I think he did appeal it and there was no award of maintenance. So he can argue that he's that should have been awarded as maintenance instead of TTD. And they didn't dispute before the commission in the brief before the commission, Ms. Evans conceded that she was capable of going back to work as a realtor as of that date. So they they bent over backwards and they did her a favor. They awarded her an additional six months. We did not appeal. We did not appeal that issue. It was as I wrote in my brief, it didn't prejudice her, it benefited her. So I'm kind of scratching my head here. Well, my question is, is there a question of fact relating to November being the MMI date? Is there a factual dispute about that? Well, I certainly agree with that. I certainly agree with that, that she was at MMI in November of 2006. But as I started out my argument, Justice Hoffman, I don't think that necessarily handcuffs the commission in setting a TTD date based upon the facts of an individual case before them. And in this case, we have a somewhat unusual situation in that we had a surgery that was contemplated and recommended, but never, never, she never had it. And they basically allowed her to, they extended the period of TTD until she herself admitted she was capable of working as a realtor. Dr. Greeson testified. Can I ask a very, you know, kind of a simple guy. So I ask kind of simple questions. Can the commission award TTD after the employee has reached MMI? I think they can in this case, because it was not... Hold on, hold on. I asked a very simple question. It only requires a yes or no. Can the commission legally award TTD benefits after the employee has reached MMI? Yes. I think that they can add, as they did in this case, an additional period of TTD benefits because it was not clear in November of 2006, it was not clear whether or not she was going to have that surgery or not. And that's the crucial fact finding that the commission did in this case. And they do in every case they, you know, like I said, it's, this is not black and white. They judge every case on its individual facts and the individual merits of that case. And that's, that's why we have judges. That's why we have arbitrators. That's why we have commissioners. Mr. Coughlin, if there is a dispute as to whether she was going to have the surgery or not, she wouldn't have reached MMI in November. And therefore, an award of TTD past November would be appropriate. Well, again, you know, hindsight is 20-20, you know. But they made a factual finding to reach MMI in November. But they didn't know in November if she was going to have the surgery or not. So you're saying they were wrong in fixing MMI as November? I think that, again, based upon the facts of this individual case, they bent over backwards to do Ms. Evans a favor, and they awarded her an additional six months of TTD. But clearly by April, when she herself admitted she was capable of returning to work as a realtor, they decided to terminate the benefits on that date. And I think that's the fact-finding ability of the commission. I don't think the commission, you know, like, again, I don't think they're handcuffed to limit the award of TTD. I think they're able to adjust an award of TTD based upon individual facts in an individual case. And that's what they did in this case. And I don't think that their fact-finding in this case is contrary to the manifest weight of the evidence. So, in other words, if I interpret what you're saying, if the commission feels like giving somebody benefits to which they're not entitled, that's okay. Again, Justice, you know, I don't think it's okay to give them benefits they're not entitled to. I'm saying that based upon the facts of this specific case, what they did was appropriate. That's what I'm saying. Okay. So my follow-up question to that, counsel, is under what authority? This sort of just is born out of the commission's discretionary authority or is there something you can point to? What I would say is that, again, you have to be flexible. This is why we have judges and we don't have things decided, you know, by a strict, you know, calculator. Because in this particular case, we have an unusual set of facts. We have surgery that's recommended at the time. We don't know whether or not the person is going to have it or not. They fashioned an appropriate remedy that they thought was fair to both sides. They gave her a little bit more TKD, I would agree, than she probably was entitled to. Because at the time in November, they didn't know whether or not, you know, she was going to have the surgery or not. And again, I think that's within the fact-finding ability of the commission. I can't this specific set of facts in this specific case. So I'm not saying that they should be awarding TKD that when somebody's not entitled to it. I'm saying that under this set of circumstances, there's nothing in the act that specifically addresses this situation. This is what the solution they came up with. And I think what they did was correct. I don't know how much more I can say than that. She got an extra six months of TKD. She was not harmed. She was not harmed, but was anyone harmed? My client probably was. But again, I can't fault the commission for, you know, again, we don't have a crystal ball. If I had a crystal ball, I would have won the lottery, you know, last month when it was a billion dollars, whatever. I wouldn't be sitting here right now. You know, they did what they did at the time based upon the information that was available at that time. And I can't say that I would fault them for what they did. As far as the wage differential, again, this was a disputed case. There was evidence on both sides of virtually every issue here. There was lots of evidence to support the commission's denying the wage differential for one. Mr. Manchetti mentioned that this lady had been a union head or still had her union card as an electrician. What he failed to mention was that she hadn't worked for an electrician for two years before this week. And even on this week for this injury, the commission had used the Sylvester case to calculate the earnings because she only worked for a couple of days. This was a cameo appearance as an electrician that she was making. She had already been involved in her training to become a realtor. There also, the commission found that she failed to establish that she had any reduction in her earning capacity. We put on evidence as to what she could have been making as a realtor. So I think that the entitlement for wage differential was strongly supported by credible evidence in this record and should be affirmed. That's why they went up so high. They acknowledged that she was unable to return to work as an electrician. That's why they went up to 40 of a man plus the additional five of each hand that they gave her. So again, I think the commission bent over backwards and was complaining about this award. It looks to me like they were very fair with what they awarded her. Unless your honors have any questions. Mr. Coughlin, I have a question. Okay. If we were to find that the commission earned in awarding TTD benefits through April 29th, how would that affect the maintenance award? There was no maintenance award. How would it affect their denial of maintenance after April 30th? Again, I don't think it would affect it at all. I think the commission denied her maintenance. If this court wants to cut the award of TTD back to 11-2 of 16. Well, I mean, if we were to tell the commission that they've got to reverse them on the award of TTD through April 29th and send it back for a recalculation of TTD based on the date of MMI, would that open up the door to a question if they were to determine that the November date was MMI and terminate TTD of that date? Would that open the door to the question of maintenance from November to April? I don't think so, Justice Hoffman. And even if technically they moved it back to November 2, in my opinion, the most they could do is examine whether or not since TTD is denied from November 2, 2016 through April 29, 2017, whether or not maybe she could during that six months, is she entitled to maintenance? If they want to litigate that, perhaps the commission could address that. But beyond that, I would say no, because clearly all along they've been asking for maintenance after April 29th of 2017. And that's raised judicata. That's already been litigated. They've already denied it. So, you know, maybe six months, but again, harmless error, because even if she wins on that, you know, they've already awarded it. So, I don't see, you know, where this is going. Any other questions? No. Thank you, Mr. Coughlin. Thank you, judges. Mr. Manchetti, you may reply. Thank you. So, in my opinion, the commission getting it right is not harmless error, right? Justice Hoffman is absolutely correct that picking the correct MMI date, picking the correct date on TTD is terminated, determines everything else about this case. So, if that MMI date is incorrect, then everything that flows from that MMI date is incorrect also, because it's the basis on which all other awards were made. Now, I'm not necessarily conceding that April 2, 2006 is the correct MMI date. In fact, if it's determined to be, you may see me again here before you arguing that that is against the manifest weight of the evidence. You mean November 2? That's correct. I'm sorry. So, what I'm trying to say is that that's not the issue before you. The issue before you is not November 2, 2006 is the correct MMI date. The issue before you as an appellate court is whether April 29, 2007 is the correct MMI date. And it's not both legally and factually. Nothing happened on April 29, 2007 other than the fact that she put her real estate license with a broker. She didn't have any medical treatment on that day. She didn't go to work on that day. So, to say that she agreed to go to work on that day is absolutely incorrect. In fact, she never went to work as a real estate agent, and she earned exactly zero from this broker. And so, this isn't a case where the employer offered to take a claimant back light duty, and the claimant refused, and that was the basis for determination of TTD. That's not this at all. There was never an offer of light duty here. That's not this case. So, to say that somehow she went to work after April 29, 2007, and that's what disqualifies her from TTD is not correct. If we were to agree with you and remanded for a new hearing on MMI, then or really on that TTD issue might be a more precise way to say it. I'm hearing you say, yes, it would open up maintenance. And so, let's just set that aside. But what about the commission's on the relationship of any psychological disorder? And what about the commission's decision on whether an electrician was her usual and customary line of work? Does it open those up too? Yes, I believe it does. But even if it doesn't, then it's still the right thing to do. It's still the right thing to do to send it back to the commission to pick an MMI date that Peggy Evans can appeal in a way that makes sense. Even the commission in this case picked two MMI dates, right? I mean, they absolutely said November 2nd was an MMI date, and they said April 29th was an MMI date. We know that April 29th cannot be an MMI date. We know that for sure, okay? Whether November 2nd is or not, we don't know because that's not the order. That's not the order. The order isn't payment of TTD through November 2nd, 2006, and then no maintenance after that, right? So, I think picking the correct MMI date, termination of TTD date, of course, affects other awards that the commission can make. And just very briefly to sum up, the Workers' Compensation Act itself recognizes that people can work and not yet be at maximum medical improvement. In fact, there's a specific benefit in the Workers' Compensation Act called temporary partial disability, right, which says even if you're not an MMI, but you're working light duty or in some other job, right, you can still be entitled to a temporary benefit because you haven't reached maximum medical improvement. So, the Workers' Compensation Act itself recognizes that maximum medical improvement is not all about whether you're working or not. Because there's a specific benefit, a specific temporary benefit, that says even if you're working, you may not be at maximum medical improvement. Mr. Mancini, on the issue of that you failed to prove there's no reduction in our earning capacity. Now, if we find that finding is not against the manifest way to the evidence, then wouldn't the issue before the Commission on Maintenance only be for entitled to maintenance prior to April the 30th? Maybe, Your Honor, but put that order in front of Peggy Evans and she may find a way to appeal that, right? That's not, we're not, we're not appealing. Mr. Mancini, you can appeal anything. Of course. Whether it has any merit, that's a different issue. Right. But the question that I had was, if we were to find that the Commission's determination that she had no reduction in could not establish a reduction in earning capacity on or after April the 30th, if we found that's not against the manifest way of the evidence, then wouldn't the issue of maintenance on remand only be entitled to maintenance prior to April the 30th? So, so the answer is no, because maintenance is a different benefit from wage differential, right? Maintenance is a different benefit from wage differential. The diminution of her earning capacity is a wage differential consideration, right? It's not a maintenance consideration. If she's under vocational rehabilitation at any point, she's entitled to maintenance under Section 8A of the Act. It doesn't matter whether she is working, not working, right? You're not suggesting that if a person is working while they're retaining vocational rehabilitation and earning as much as or more than they were earning when they were injured, that they'd still be entitled to maintenance, are you? No, I'm not, because that, it would as a credit against the maintenance, right? What they were earning would be acting as a credit against the maintenance. So, where does it say that? Well, it's the general principle of law, right? That what the employer pays is a credit against what they owe, right? Well, it wouldn't have to be. She wouldn't have to be earning it from the employer. She could be working for someone else. I mean, in order to establish maintenance, don't you have to establish that there is some relationship between the injury and your diminished ability to work for wages at the same level? It's certainly one of the factors under the national T case about vocational rehabilitation, right? Maintenance comes with vocational rehabilitation. And that's certainly one of the factors, what you're capable of earning now, right? But don't forget, April 20, please don't forget, excuse me, that on April 29th, 2007, she did not go to work. She placed her real estate license with a broker and in fact, never went to work and earned exactly zero from placing that license with the broker. Mary, your time is up unless there's some final questions from the court. So, I'd just like to state my request for relief. The appellant Peggy Evans respectfully requests that this appellate court reverse the order of the circuit court, set aside the commission decision and remand to the commission with instructions to address the issues of maximum medical improvement and usual and customary line of employment. Thank you for your attention. Thank you, counsel, both for your arguments on this matter this morning. It will be taken under advisement or written disposition.